

CLERK'S OFFICE
A TRUE COPY
Nov 29, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original     ☐ Duplic

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.   **24-M-560 (SCD)** |
| The person of and personal effects in the immediate control | ) |
| of KENYA QUIROZ and to seize any cellular device in | ) |
| QUIROZ possession, as further described in Attachment A | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Eastern    District of    Wisconsin
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   12-13-24   *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   11-29-24. 9:00 am

Judge's signature

City and state:   Milwaukee, WI      Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Person and Property to Be Searched**

The person to be searched is KENYA QUIROZ (DOB: 04/27/1999).

The property to be searched is any cellular device ("the target cellphone(s)") found on the person, in the presence of, or in the personal effects in the immediate control of KENYA QUIROZ (DOB: 04/27/1999).

During the execution of the search described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of KENYA QUIROZ (DOB: 04/27/1999) to the fingerprint scanner of the target cellphone(s); (2) hold the target cellphone(s) in front of the face of KENYA QUIROZ (DOB: 04/27/1999) and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

## ATTACHMENT B

### Items to be Seized

All records and information contained in the target cellphone(s), more fully described in Attachment A, that relate to violations of 18 U.S.C. §1512, involving Ronnell BOWMAN, Kenya QUIROZ, or their co-conspirators, including but not limited to the following:

1. Any contacts, messages, or communications between GRANT, QUIROZ, BOWMAN, or his associates.

2. Any records and information about Ronnie JACKSON.

3. Any records and information about attempting to locate, contact, or intimidate particular inmates at the Kenosha County Detention Center by BOWMAN or his associates.

4. Any records and information about pending criminal cases involving Ronnell BOWMAN.

5. Any records and information relating to Monique GRANT's Facebook account, and the custody and control of that account.

6. Any records and information relating to Kenya QUIROZ's Facebook account, and the custody and control of that account.

7. Any records and information about the Wild 100's or the Shark Gang.

8. Evidence of user attribution showing who used or owned the target cellphone(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

20

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Nov 29, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
The person of and personal effects in the immediate control )
of KENYA QUIROZ and to seize any cellular device in )
QUIROZ's possession, as further described in Attachment A )

Case No. 24-M-560 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1512 | witness tampering |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jake Dettmering, FBI SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 11-29-24

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to search the person of and personal effects in the immediate control of KENYA QUIROZ (DOB: 04/27/1999) and to seize any cellular device in QUIROZ possession ("target cellphone(s)"), and the extraction from that target cellphone(s) of the electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020. Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained, and executed search and arrest warrants related to the distribution of illegal narcotics and violent crimes, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

1

4.     I know from training and experience that it is common for criminals of all sorts to communicate by cellular phone through a variety of electronic media. These criminals can use text messaging, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook, Snapchat, and Twitter to communicate about, organize, and commit criminal activity. Furthermore, based on my training and experience, I know that social media applications such as Facebook are a common way for people with relatively little real-world connection to be able to locate one another and communicate.

5.     Based on my training and experience, I also know that people often carry their cellular devices on their person or in personal effects in their immediate control. For that reason, there is probable cause to search the person and personal effects of KENYA QUIROZ for the target cellphone(s), to seize the target cellphone(s), and to extract the electronically stored information described in Attachment B from the target cellphone(s).

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1512 have been committed by Ronnell Bowman, Kenya Quiroz, and other unknown persons.  There is also probable cause to search the person and personal effects in the immediate control of KENYA QUIROZ for a cell phone(s) ("target cellphone(s)"), and probable cause to search the target cellphone(s) for evidence of these violations, as described in Attachment B.

## PROBABLE CAUSE

7.     Beginning in February 2021, the ATF, MPD, and FBI, have been investigating identified members of the Wild 100's, a violent street gang in Milwaukee, also known as the Shark Gang, including Ronnie JACKSON, Lawrence TURNER, and Ronnell BOWMAN, among others, for federal firearms offenses and federal program fraud.

2

8.      As a result of this investigation, BOWMAN and JACKSON were charged in the Eastern District of Wisconsin in Case No. 23-CR-077 with a conspiracy to commit murder for hire, and BOWMAN, JACKSON, TURNER, and 26 other defendants were charged with conspiracy to commit mail fraud and other crimes. While the vast majority of the defendants have since pled guilty, the trial in this case was tentatively scheduled to begin in November 2024. On October 8, 2024, the grand jury returned a superseding indictment against BOWMAN, JACKSON, and TURNER for mail fraud conspiracy, murder for hire, conspiracy to commit murder for hire, and conspiracy to commit firearms offenses.

9.      I know from a review of jail calls and messages placed by BOWMAN in the days following the superseding indictment that BOWMAN began to express concern that JACKSON would testify against him, and that BOWMAN began a pressure campaign against JACKSON to prevent JACKSON from testifying against BOWMAN at trial. During these jail calls and messages, BOWMAN spoke with JACKSON's mother, sister, and child's mother and complained to them that JACKSON is "police" and "lying on me" and that they need, for example to: "talk to your son."

10.      I also know that on or about October 3, 2024, JACKSON was moved to Kenosha County Detention Center (KCDC) for his safety. I also know that BOWMAN is currently housed at Ozaukee County Jail but had previously been housed for several months at KCDC.

11.      I am aware of an individual named Kenya QUIROZ, a female with the phone number of 414-530-1918, who has been in communication via jail calls with both BOWMAN and JACKSON. I know that JACKSON has identified QUIROZ as a girlfriend, and that this description seems consistent with their recorded conversations.

12.     On or about October 12, 2024, BOWMAN spoke with QUIROZ at 414-530-1818 on a jail call (74294500_178988) and in summary, BOWMAN stated to QUIROZ that she needed to make JACKSON "feel guilty," and instructed her to write him or call him and tell him that you talked to Ronnell and tell him that he's "police."

13.     I know that on October 13, 2024, during a jail call, BOWMAN dictated a message that BOWMAN requested QUIROZ send to JACKSON breaking up with him. In various calls and messages, BOWMAN identifies QUIROZ as his "sister," although from other messages it is clear that she is not.

14.     On October 13, 2024, JACKSON received messages on his jail tablet from QUIROZ stating in substance:

> I talked to ronnell today- you're bogus ASB, weird & untrustworthy. he told me for the last 3 years he's been tryna help you prove your innocence just for u to lie on him. then you're over here swearing that you love me if you love why do you KEEP trying to keep things from me & I thought we were supposed to tell each other everything I'm confused. ronnell all he kept saying is that you police & that it ain't no secret. These lawyers ain't lying! Paperwork don't lie bam wtf! just stop trying to play me like i'm stupid or something!!! IM NOT DUMB!! be fr.

15.     On October 13, 2024, JACKSON received another message on his jail tablet from QUIROZ stating in substance:

> STOP TRYING TO PLAY ME LIKE IM CRZY OR SLOW OR SOMETHING WE FR DONE THIS TIME THERES NO MAYBES OR NOTHING THIS TIME GO BE WITH THAY BITCH YOU BEEN TALKING TO THIS WHOLE TIME YOU'VE BEEN TALKING TO ME AND DON'T LIE BAM LIKE FOREAL RONNIE YOU CAN GLADLY GO FUCK YOURSELF AND THAT BITCH 6 MONTHS AGO I KNEW I WASNT GOING TRIPPING WHEN YOUR BABYMOMS SAID SHE GONE SLAP ME AND FIGHT ME SHIT WHATEVER TF TO CHRISSY YOU ONEW EXACTLY WHO TF SHE WAS TALKING ABOUT YOURE WEIRD ASAB SO NOW GO KILL YOURSELF FR YOU FUCKED UP FR AND I EXPECT YOU GET THE KARMA YOU DESERVE BECAUSE IVE BEEN NOTHING BUT LOYAL AND TRUSTWORTHY TO YOU IVE BELIEVED EVERY LIE YOU'VE EVER TOLD ME IDK HOW U CAN LOOK AT ME AND SAY YOU LOVE ME SMH I DONT EVER WANNA TALK TOL YOU EVER AGAIN U SICK ASF.

4

16.    I am also aware from reviewing JACKSON's communications that JACKSON received a text on his jail tablet that closely mirrors the message that BOWMAN directed QUIROZ to send and dictated to QUIROZ:

> "Idk how you sleep at night so knowing you lying on people just to get out of jail especially on people u claim their your brothers gtfoh you bogus asab you weird asf… I don't wanna deal with you anymore atp are you going to tell on me one day???? Be fr go text your other bitches I can't be seen in public with yo police ass!!!!!"

17.    I also know that on October 13, 2024, BOWMAN began calling other individuals and attempting to locate a "Big Mike" in Kenosha.  In those jail calls, BOWMAN's descriptions suggested that "Big Mike" was a corrections officer at Kenosha County Detention Center. In jail calls on October 13, 2024, and October 14, 2024, BOWMAN spoke with an unknown male at call number 224-430-3644 and described "Big Mike" as the "the stud bitch from Kenosha," "the one my n****s was busting a move with," and "the ugly d*ke bitch with the shoe store." The unknown male asks: "Is she a CO?" BOWMAN confirmed that she is and describes her as short ,with dreads and from Racine. BOWMAN also described other possible corrections officers at Kenosha County Detention Center. BOWMAN stated that he was attempting to reach "Big Mike" or "Duncan."

18.    On October 27, 2024, BOWMAN spoke with the unknown male using 224-430-3644 and the unknown male indicated to BOWMAN that he found "Big Mike's" Facebook page. BOWMAN instructed the unknown male to send the pictures to BOWMAN's girl. BOWMAN provided the phone number for QUIROZ. Based on the context of the call, BOWMAN then appears to be looking at the photos as he speaks to the unknown male. BOWMAN confirms that the female is "Big Mike." I reviewed text messages sent to and from BOWMAN's jail messaging accounts, which revealed that on October 27, 2024, BOWMAN received a series of photos from

QUIROZ which were screenshots of a female's Facebook profile. BOWMAN responds to QUIROZ: "Yes that's her sis, write her & say, "hey, my brother said what's up how you been"?"

19.     I am aware that QUIROZ sent BOWMAN several screenshots from Facebook profiles on jail messages, and that approximately 30 minutes after receiving the last photograph with the caption "Nycole Franklinn," BOWMAN responds by message on his jail tablet: "Hell yea thats her, add her on both pages, tell her i said 'whats up, how she been'??"Approximately 30 minutes after receiving the last photograph with the caption "Nycole Franklinn," BOWMAN responds by message on his jail tablet: "Hell yea thats her, add her on both pages, tell her i said 'whats up, how she been'??"

20.     I conducted a search of publicly available Facebook profiles and located the relevant Facebook accounts.     Specifically, QUIROZ's Facebook account is located at https://www.facebook.com/KenyaaTooSmoov.   The two accounts sent to QUIROZ as described above     are     located     at:     https://www.facebook.com/Nicole.Brooks32     and https://www.facebook.com/100076202826625, which has the profile name "Moneyy Seed".

21.     I noted that QUIROZ's Facebook account was currently friends with the MONEYYSEED Facebook account.

22.     I filed preservation requests with Facebook on the following three accounts:

a.     https://www.facebook.com/KenyaaTooSmoov

b.     https://www.facebook.com/Nicole.Brooks32

c.     https://www.facebook.com/100076202826625  (The profile name for this account is Moneyy Seed).

23.     On October 29, 2024, I conducted an interview with a confidential witness (CW) regarding a separate, but related, witness tampering allegation involving BOWMAN.   CW described how he had previously been incarcerated with BOWMAN at the Kenosha County

6

Detention Center for several months. CW was asked if he was familiar with any correctional officers at KCDC, and CW mentioned several, including a woman he referred to as "Big Mike." CW stated that "Big Mike" was a corrections officer at KCDC who had been there at the same time as BOWMAN, and that at the time CW left the jail, BOWMAN and other inmates were in the process of convincing "Big Mike" to do improper things for them such as smuggling in telephones or vape pens. CW described several other KCDC guards including one named "Dunkin."

24.     In the interview CW stated that while in custody at Dodge Correctional, he was approached by two individuals, Jaquan Wright and Jalen Williams, who he knew to be associates with BOWMAN. CW stated that Williams told him "We have to holler at you", "We got a message from Bowman" and "I read your statement from Ronny Bow, it's bogus what you said. We know where your grandma is at, and we are gonna put a bag on your head, no matter where you go."

25.     Based on the earlier jail calls and messages between BOWMAN and the unknown male and BOWMAN and QUIROZ, I obtained photos of Monique Nicole Grant (DOB: 06/21/1994), who is a corrections officer at the Kenosha County Detention Center and confirmed that GRANT's photo is consistent with the photos that QUIROZ sent to BOWMAN and that BOWMAN identified as "Big Mike." I showed a photograph of Monique Grant to CW, who confirmed that GRANT was the corrections officer at KCDC referred to as "Big Mike."

26.     On October 27, 2024, BOWMAN sent a message to another person listing the account information for MONIQUE GRANT as follows: "*Moneyy Seed "Nycole Franklinn (Ms. Grant)."

27.     Between October 16, 2024, and October 25, 2024, I also noted messages between BOWMAN and "Naomi Davis," where BOWMAN appears to direct Davis to have a male inmate

get to the area of KCDC where BOWMAN apparently believes that JACKSON is housed. On October 16, 2024, BOWMAN asks if Davis's contact had made it to "KCDC yet? If so ask him what unit he on?" and says that his "lil guy\ well old lil guy just got here he on some super police ass shit smh." BOWMAN tells Davis to "tell folks he gotta get back to the back where we used to be. Catch a ticket, he know what to do." In these messages, BOWMAN appears to inform Davis that JACKSON (his "lil guy\ well old lil guy") is a suspected cooperator ("he on some super police ass shit smh"), and then directs the male through Davis to JACKSON's suspected location at KCDC ("get back to back where we used to be. Catch a ticket, he know what to do.").

28.     This investigation eventually identified the male at KCDC as Charles Woodhouse. A keep-separate order has been placed, preventing Woodhouse from having contact with JACKSON. However, I am aware from BOWMAN's messages to Woodhouse through Davis that Bowman asked Woodhouse to do two additional tasks.

29.     I am aware that on November 6, 2024, Davis informed BOWMAN that "Sco on d south w that Ronnl Jackson n****".  BOWMAN responds: "Tell Sco dude police, he supposed to be my brother folks agreed to lie on me smh" and "Tell Sco spread the word dude ass a dirty cop lmfao stay away from him!!" and "Matter of fact bring it to his attention, ask him about that shit. Say "I heard you lying & telling on my n***** Bow to get out".

30.     I am aware that in subsequent messages BOWMAN asks Davis to "get Ms. Duckins Facebook or Instagram for me, I need that"!!" and that Davis replies on behalf of Woodhouse that he will try, although she does not normally work in his area.  Days later BOWMAN asks again "Bro make sure you get that bitch social media for me, don't forget!!"  I am aware that as described by CW above there *is* a female KCDC Corrections Officer named Dunkin, and I believe this is who BOWMAN is referring to.

31.     I am aware that Woodhouse has currently been moved to a disciplinary unit at KCDC. However, it is unclear if that incident was related or unrelated to Woodhouse's attempts to be moved closer to JACKSON, "Sco" or "Ms. Duckins."

32.     I am aware of a video visit between BOWMAN and QUIROZ which took place October 29, 2024.  In this visit QUIROZ confirmed to BOWMAN that she has made the contact he requested earlier—stating in summary, that she (meaning GRANT) accepted my friend request and asked her who is your brother?  BOWMAN directed QUIROZ to respond and say, "Ronnie Bow from KCDC." QUIROZ asked BOWMAN who the female is and BOWMAN responded that she works there.  BOWMAN asked which page wrote QUIROZ back, and referred to "The Moneyy Seed" page or the other one?  At the end of this video visit, BOWMAN directed QUIROZ to, in summary, write that "bitch" back and say "Ronnie Bow from KCDC" and BOWMAN said I need to know what she says so I know (BOWMAN) whether I can ask her for the "bitch number" or not, and BOWMAN stated that he needs "that bitch number" and needs her "coworker's Facebook."

33.     I am aware that on November 1, 2024, BOWMAN sent QUIROZ a message asking, "Did that lady write you back on Facebook?" to which QUIROZ responded "She only opened my message but not text me back."  To date, QUIROZ has not, to law enforcements' knowledge, notified BOWMAN of any response from Grant.

34.     From the calls and messages, it is clear that BOWMAN has had QUIROZ contact GRANT at two Facebook pages and is actively seeking to expand on those contacts.

35.     On November 6, 2024, I sought and obtained a federal search warrant under Case No. 24-M-516 signed by the Honorable Stephen C. Dries, United States Magistrate Judge, ordering Facebook to disclose certain records pertaining to the above-mentioned accounts.

36.     I have reviewed the return from said warrant, and although it confirmed that the GRANT's accounts had recently accepted friend requests from QUIROZ, the returns did not include messages.  In December 2023, Meta announced that it was launching default end-to-end encryption for all personal chats and calls on Messenger and Facebook. According to Meta, Meta cannot produce the content of messages. (https://about.fb.com/news/2023/12/default-end-to-end-encryption-on-messenger/; https://about.fb.com/news/2024/03/end-to-end-encryption-on-messenger-explained/).

37.     I know from both professional and personal experience that many Facebook users currently access the Facebook and Messenger applications primarily through a mobile phone. I therefore believe it is reasonable to expect that QUIROZ's mobile phone, with phone number 414-530-1918, contains the Facebook application and the messages sent to her by CO Grant.

38.     The records provided by Meta for Facebook account "Kenya Quiroz" (Account Identifier: https://www.facebook.com/Kenyaa TooSmoov) lists the name "Kenya Quiroz" and a current city of Milwaukee, Wisconsin and date of birth of 04/27/1999.. It also lists 414 530-1018 as the number associated with the account, and notes verification of that number on April 24, 2024. The account is still active as of the date of the warrant production.  Throughout October and into November 2024, a mobile device running the Apple iPhone operating system and the MessengerLiteforiOS application repeatedly and regularly logs into this Facebook account, and all "active sessions" as of the warrant return appeared to be on one or more iPhones.

39.     These records revealed that Grant's two Facebook pages each are "friends" with QUIROZ as of the date of the warrant return.  "Nycole Franklinn" accepted QUIROZ's friend request as of October 27, 2024, and "Moneyy Seed" accepted QUIROZ's friends request on November 3, 2024.

40.    I know that monitoring of BOWMAN's custodial messages has revealed that QUIROZ acts as a sort of hub for BOWMAN's communications with the co-defendants and the world outside and that QUIROZ apparently has access to or control over at least some of his funds.

41.    Regarding communications with codefendants, for instance:

a.  QUIROZ messages BOWMAN on November 4, 2024, a communication from "k", transmitted from an incarcerated co-defendant to QUIROZ by unknown means: "Julio and lil A left the same day me and savage stuck here I get sentenced January 2 and he get sentenced January 10th…"

b.  On November 13, 2024, in an apparent continuation, BOWMAN tells QUIROZ: "Write kmoney & tell dude be looking out for my cousin bricks he just got to dodge yesterday, he big, tall & fat."

c.   I am aware that "Bricks" is BOWMAN's fraud co-defendant Marcus Marlbro, that "Julio" is fraud codefendant Jaquan Wright, that "savage" is fraud codefendant Ramon Savage, and that "Lil A" is fraud codefendant Jalen Williams.

d.  BOWMAN receives messages from "Gabriel Oshogwemoh" that are communications from fraud co-defendant (and convicted murderer) Joel Blake, which he then passes to QUIROZ: "Jo said can you order him a hygiene bag?"

e.  QUIROZ messages BOWMAN on November 8, 2024: "one of your people text me asking about u they said call 'em 901-907-5808." Bowman responds, "I think that's my brother Courtney." And "Text that n***** and tell dude ion got no money to make no calls rn, tell dude cash app or apple pay you for me" and "Send him your cash app Kenya. The actual screenshot.  Then send dude this app and my information tell him to add & text me."

11

f. On November 1, 2024, BOWMAN directs QUIROZ:

"414-813-3760 send this # the cidnet link sis. Tell her to "add me on there and send me some pictures, also let her know if she need help you'll help her."

Later that same day he asks:

"Did one of my brother's cash app or apple pay you for me yet? Or yesterday? And did you text that #?"

Regarding finances:

g. On November 12, 2024, Bowman messages Kenya: "my aunty just cash app you for me put it on my books real quick please & thank you."

h. Bowman also sends another individual an accounting of his various expenditures, which includes entries of $2300, $2000, and $4000 in various months listed as "cash from Kenya".

i. BOWMAN receives messages from "Debra Moore" which are from "T$" or "Ty", apparently another already-sentenced associate of BOWMAN's. Bowman directs "Ty" that: "My sister #414-530-1918, her name is "Kenya", anytime you looking for me & need to get up with me **she's my emergency contact!!".** (emphasis added).

42. I know that QUIROZ also provides three-way calls for BOWMAN for numbers he wishes to not call directly, both because I am aware of such calls actually being placed, and because of messages such as this one sent from BOWMAN to QUIROZ November 5, 2024:

"You got time to give me a 3-way? So I can see what dude bm wants"

43. I am aware that while BOWMAN has been using QUIROZ to coordinate his external communications and a portion of his finances, according to his messages he also has an ulterior motive for contacting her regularly—to hurt or embarrass JACKSON. This is displayed by this November 12, 2024, text from BOWMAN to Gabriel Oshogwemoh:

"Meanwhile I'm Finns try to milk this bitch Kenya dry. I usually never ask her for shit but fuck that she gotta bring something to the table now. She be sending me nudes & coming up here to visit me. She already promised me some pussy and a 3-some, I just gotta figure this shit out. I'm Finns fuck this bitch and put her on cam on bro I'm Finns hurt a n**** feelings."

44.     In summary, I believe that BOWMAN began attempting to locate corrections officers at KCDC as soon as he became aware that JACKSON had been transferred to that facility, eventually focusing on GRANT, and is currently attempting to communicate with GRANT through QUIROZ in an attempt to use GRANT to contact JACKSON regarding his cooperation in this case and therefore, tamper and obstruct an ongoing investigation and prosecution in violation of 18 U.S.C. § 1512. I believe that QUIROZ phone will also contain her communications with other co-defendants and associates on BOWMAN's behalf, including "K$" who is apparently at Dodge Correctional with CW, another tampering victim of BOWMAN's. I believe QUIROZ phone also contains her CashApp information including transfers to and from BOWMAN and on his behalf. Lastly, I believe QUIROZ's phone will contain copies of messages directly to JACKSON, dictated to her by BOWMAN, as well as likely communications to and about other JACKSON family members, all of which constitutes direct evidence of violations of 18 U.S.C. §1512.

**TECHNICAL TERMS**

45.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address

13

books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing

14

documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

46. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

47. Based on my knowledge, training, and experience, I know that cellular telephones can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

48. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the target cellphone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the target cellphone(s) because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

15

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

49. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the target cellphone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

50. The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

f. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint

16

scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

g. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

h. If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

i. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

j. As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

k. I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped

with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

l.  In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose physical characteristics are among those that will unlock the device via biometric features, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device.

m.  Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of KENYA QUIROZ to the fingerprint scanner of the device; (2) hold the device in front of the face of KENYA QUIROZ and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

## CONCLUSION

51.  I submit that this affidavit supports probable cause for a warrant to search the person of and personal effects in the immediate control of KENYA QUIROZ (DOB: 04/27/1999) and to seize QUIROZ's cellular device ("target cellphone(s)"), and the extraction from that target cellphone(s) of the electronically stored information described in Attachment B, for evidence of witness tampering by BOWMAN and QUIROZ, in violation of 18 U.S.C. § 1512.

18

## **ATTACHMENT A**

### **Person and Property to Be Searched**

The person to be searched is KENYA QUIROZ (DOB: 04/27/1999).

The property to be searched is any cellular device ("the target cellphone(s)") found on the person, in the presence of, or in the personal effects in the immediate control of KENYA QUIROZ (DOB: 04/27/1999).

During the execution of the search described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of KENYA QUIROZ (DOB: 04/27/1999) to the fingerprint scanner of the target cellphone(s); (2) hold the target cellphone(s) in front of the face of KENYA QUIROZ (DOB: 04/27/1999) and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

**ATTACHMENT B**

**Items to be Seized**

All records and information contained in the target cellphone(s), more fully described in Attachment A, that relate to violations of 18 U.S.C. §1512, involving Ronnell BOWMAN, Kenya QUIROZ, or their co-conspirators, including but not limited to the following:

1.  Any contacts, messages, or communications between GRANT, QUIROZ, BOWMAN, or his associates.

2.  Any records and information about Ronnie JACKSON.

3.  Any records and information about attempting to locate, contact, or intimidate particular inmates at the Kenosha County Detention Center by BOWMAN or his associates.

4.  Any records and information about pending criminal cases involving Ronnell BOWMAN.

5.  Any records and information relating to Monique GRANT's Facebook account, and the custody and control of that account.

6.  Any records and information relating to Kenya QUIROZ's Facebook account, and the custody and control of that account.

7.  Any records and information about the Wild 100's or the Shark Gang.

8.  Evidence of user attribution showing who used or owned the target cellphone(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.